WATSON ET AL., APPELLANTS, *v.* GRANGE MUTUAL CASUALTY COMPANY, APPELLEE.

[Cite as Watson *v.* Grange Mut. Cas. Co. (1988), 40 Ohio St. 3d 195.]

(No. 87-2017—Submitted October 19, 1988—Decided December 30, 1988.)

*Moore, Moore & Moore* and *Joseph G. Carroll,* for appellants.

*Gustin & Lawrence Co., L.P.A.,* and *James W. Gustin,* for appellee.

WRIGHT, J. We again deal with the scope and interpretation of the uninsured motorist provisions of a standard automobile insurance policy. R.C. 3937.18(A)(1) requires that every automobile liability carrier offer its customers uninsured motorist coverage. As this court has consistently stated, the public policy underlying R.C. 3937.18 is " 'to protect persons

injured in automobile accidents from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated.' " *Hedrick* v. *Motorists Mut. Ins. Co.* (1986), 22 Ohio St. 3d 42, 45, 22 OBR 63, 66, 488 N.E. 2d 840, 843 (quoting *Abate* v. *Pioneer Mut. Cas. Co.* [1970], 22 Ohio St. 2d 161, 165, 51 O.O. 2d 229, 231, 258 N.E. 2d 429, 432); *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593, 595, 23 O.O. 3d 495, 496, 433 N.E. 2d 547, 548.

In the instant case a jury determined it was the negligence of Billie Ray Payne and no other person which was the sole proximate cause of Watson's injuries. It is undisputed that there was no finding of joint liability as between Billie Payne and any other person, specifically the Gibsons. Likewise, it is undisputed that the tortfeasor in this case, Billie Payne, did have liability insurance, albeit inadequate, to fund the damage award resulting from his negligence. Although the Watsons have received the limits of Carlos Payne's policy coverage with State Farm, they nevertheless seek to recover under the uninsured motorist provisions of their own policies with Grange Mutual on the theory that the sedan being towed by Payne was "uninsured."

As the court of appeals stressed, the policies at issue contain the standard clause dealing with uninsured motorist coverage, and although the policies allude to accidents arising from the ownership, maintenance or use of the uninsured automobile, the endorsement clearly is directed toward the uninsured motorist. The coverage's clear focus is on the operator, not the vehicle. It is axiomatic that drivers cause accidents, not inanimate vehicles. The purpose of the uninsured motorist statute is not to provide coverage for an uninsured

vehicle but rather to afford the insured additional protection in the event of an accident. This form of coverage protects against losses caused by a limited group of tortfeasors. See *Motorists Mut. Ins. Co.* v. *Tomanski* (1971), 27 Ohio St. 2d 222, 224, 56 O.O. 2d 133, 134, 271 N.E. 2d 924, 925 (quoting *Horne* v. *Superior Life Ins. Co.* [1962], 203 Va. 282, 285, 123 S.E. 2d 401, 404, and *Hein* v. *Nationwide Mut. Ins. Co.* [1965], 106 N.H. 378, 381, 213 A. 2d 197, 199).

With this public policy in mind we must determine the dispositive issue in this case, *i.e.,* whether an insurer providing uninsured motorist protection must provide coverage when the insured collides with another insured motorist who happens to be towing an uninsured vehicle. This is clearly a case of first impression in Ohio, and as far as we can detect, the issue has been resolved in no other jurisdiction. In analyzing this problem we think it instructive to identify what is not at issue.

Appellants cite several cases from various jurisdictions to support their proposition that the towing of a motor vehicle arises out of the "ownership, maintenance or use" of the vehicle. See, *e.g., American Fire & Cas. Co.* v. *Allstate Ins. Co.* (C.A. 4, 1954), 214 F. 2d 523; *Hartford Acc. & Indemn. Co.* v. *Travelers Ins. Co.* (1979), 167 N.J. Super. 335, 400 A. 2d 862; *Dairyland Ins. Co.* v. *Drum* (1977), 193 Colo. 519, 568 P. 2d 459. However, in each of these cited cases that involved a towed vehicle, the vehicle was *insured* and the dispute centered on whether the insurer of the towed vehicle was obligated to provide coverage.[3] If the towed sedan in the instant case were

---

[3] This same issue was presented in *Hall* v. *United States Fid. & Guar. Co.* (1957),

insured and the issue were whether that insurer was obligated to provide coverage, then we might find these cases persuasive. However, because the issue here is whether an insurer providing *uninsured* motorist protection must provide coverage, the cases cited by appellants are inapposite.

The facts in this case also differ from the situation presented in *Tomanski,* where we held that an individual injured as a result of the concurrent negligence of an insured and an uninsured motorist was entitled to coverage under the uninsured motorist provisions of his policy. *Tomanski, supra,* at syllabus. Here, a jury concluded that the accident resulted solely from Billie Payne's negligent operation of the pickup truck. Since the Gibsons were not found concurrently negligent, there is no uninsured tortfeasor on whom to base uninsured motorist protection under *Tomanski,* as we decline the suggestion that the towed sedan itself was an uninsured tortfeasor.

While there is no question that R.C. 3937.18 should be liberally construed, it must be construed "to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists." *Curran* v. *State Automobile Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33, 38, 54 O.O. 2d 166, 169, 266 N.E. 2d 566, 569. The statute was designed to provide protection against the negligence of individuals, not inert machines. We must agree with the court of appeals that Billie Payne was covered under a liability policy issued by State Farm. The fact that Billie Payne was towing a vehicle did not in any way alter his status as an *insured* motorist, and thus there being no uninsured tortfeasor, the Watsons are not entitled to uninsured motorist coverage.

Accordingly, we find as a matter of law that the uninsured motorist coverage provisions of the Grange Mutual policies are not applicable to the facts of this case. Therefore, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., HOLMES and H. BROWN, JJ., concur.

SWEENEY, LOCHER and DOUGLAS, JJ., dissent.

SWEENEY, J., dissenting. Unfortunately, as has happened too often in recent cases, the majority in its zeal to arrive at a particular result has strictly construed the language of an automobile liability insurance policy against the insured and liberally construed it in favor of the insurance company which drafted the language that is being disputed. In light of such circumstances, I must vigorously dissent from the majority opinion herein.

While most of the reasoning employed in the majority opinion is cursory, it is somewhat heartening to see

---

107 Ohio App. 13, 7 O.O. 2d 344, 155 N.E. 2d 462, relied on by the trial court below. In *Hall,* the claimant was injured when he was squeezed between a stalled jeep and an automobile to which he was waiting to attach a tow line. The participants had intended to start the jeep by towing it with the automobile. The court held, *inter alia,* that the jeep's insurer was obligated to defend and provide coverage because the claimant's injuries arose from the "use" of the jeep under the terms of the policy.

that some of the majority have finally acknowledged that uninsured motorist coverage is designed for the protection of persons, not automobiles. See *Dairyland Ins. Co.* v. *Finch* (1987), 32 Ohio St. 3d 360, 366-368, 513 N.E. 2d 1324, 1330-1332 (Sweeney, J., dissenting).

In any event, the key inquiry here is to determine whether uninsured motorist coverage exists. Coverage, of course, is determined by resorting to the language set forth in the insurance contract. The majority opinion does not include the language of the subject uninsured motorist provision issued by defendant-insurance company. It provides in relevant part:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, *caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile* * * *." (Emphasis added.)

The facts, as stipulated below, indicate that the towed sedan was uninsured and that it was a contributing factor to the accident. This being the case, I believe that plaintiffs may make a valid claim for uninsured motorist coverage, since under the policy language, the accident arose out of the "use" of an uninsured motor vehicle. At the very least, the language of the subject uninsured motorist provision is ambiguous and reasonably susceptible to more than one interpretation, and therefore must be strictly construed against the insurer and liberally construed in favor of the insured. See, *e.g., Faruque* v. *Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St. 3d 34, 31 OBR 83, 508 N.E. 2d 949. While the majority is intent on exalting public policy in a very limited respect, it ignores or forgets this central canon of insurance contract construction illustrated in *Faruque, supra,* which was also formulated under sound public policy considerations. Suffice it to say that this standard has guided this court for many years.

The majority summarily dismisses certain cases cited by plaintiffs because those cases involved towed vehicles that were insured. However, the majority completely misses the point raised by plaintiffs concerning those cases, *i.e.,* what constitutes a "use" of a motor vehicle. As stated in 7 American Jurisprudence 2d (1980) 608, Automobile Insurance, Section 131: "The vehicle which is being towed also is being 'used' during the towing operation." Moreover, it appears that this is the prevailing viewpoint throughout the country. See Annotation, Automobile Liability Insurance: What Are Accidents Or Injuries "Arising Out Of Ownership, Maintenance, Or Use" of Insured Vehicle (1982), 15 A.L.R. 4th 10. See, also, *e.g., Tolleson* v. *State Farm Fire & Cas. Co.* (La. App. 1984), 449 So. 2d 105.

In my view, the majority focuses on a distinction that is largely irrelevant, *i.e.,* whether the towed vehicle was insured. The crucial inquiry is whether the towed vehicle was being put to "use" under the terms of the uninsured motorist provision. To say that such cases are inapposite because the vehicles being towed were insured effectively creates a distinction without a difference.

The divergent viewpoints expressed in this dissent and the majority opinion point out the fact that the subject provision is susceptible of more than one interpretation. As such, I

believe the policy language must, at a minimum, be liberally construed in favor of plaintiffs, the insureds, and strictly construed against the defendant-insurance company pursuant to *Faruque, supra,* and other like precedents.

For these reasons, I would reverse the split decision of the court of appeals, and reinstate the decision of the trial court finding coverage for plaintiffs under the subject uninsured motorist provision.

LOCHER and DOUGLAS, JJ., concur in the foregoing dissenting opinion.